IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


AUTUMN DAVIS,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          1:19CV661
                                       )
UNIVERSITY OF NORTH CAROLINA           )
AT GREENSBORO, THE BOARD OF            )
GOVERNORS OF THE UNIVERSITY            )
OF NORTH CAROLINA, and                 )
RALEIGH SCHOOL OF NURSE                )
ANESTHESIA,                            )
                                       )
          Defendants.                  )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss filed by Defendant
Raleigh School of Nurse Anesthesia ("RSNA"). (Doc. 47.) For the
reasons that follow, this court will grant in part and deny in
part RSNA's motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This court adopts the facts set forth in this court's prior
memorandum opinion in this matter. (See Mem. Op. & Order
(Doc. 13) at 2–10.) Additional relevant facts will be addressed
as necessary throughout the opinion.

Plaintiff filed her Complaint in this court in July 2019. (Compl. (Doc. 1).)[1] On January 12, 2022, this court entered its memorandum opinion granting RSNA's motion to set aside entry of default, and directed RSNA to answer or otherwise respond to the Complaint within ten days of the entry of the memorandum opinion. (Mem. Op. & Order (Doc. 44) at 14.)[2] On January 24, 2022, RSNA filed a motion to dismiss, (Doc. 47), along with a supporting brief, (Br. in Supp. of Mot. to Dismiss ("RSNA's Br.") (Doc. 48)). Plaintiff responded, (Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (Doc. 52)), and RSNA replied, (Doc. 53).

## II.  STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642,

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] This court notes there is some question whether default judgment should have been entered in the first place given the defects with service.

Case 1:19-cv-00661-WO-JLW   Document 90   Filed 08/22/22   Page 2 of 36

647 (4th Cir. 1999). In a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. <u>Richmond, Fredericksburg & Potomac R.R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991); <u>see also</u> <u>Evans</u>, 166 F.3d at 647. The court should grant the Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Richmond</u>, 945 F.2d at 768. A Rule 12(b)(1) motion may allege that sovereign immunity is a jurisdictional bar against the claim. <u>See</u> <u>Cunningham v. Gen. Dynamics Info. Tech., Inc.</u>, 888 F.3d 640, 649–51 (4th Cir. 2018).

### B. <u>Federal Rule of Civil Procedure 12(b)(2) and (b)(5)</u>

Under Federal Rule of Civil Procedure 12(b)(5),

> [t]he plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4. In determining whether the plaintiff has satisfied his burden, the technical requirements of service should be construed liberally as long as the defendant had actual notice of the pending suit. "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored."

<u>Elkins v. Broome</u>, 213 F.R.D. 273, 275 (M.D.N.C. 2003) (internal citations omitted) (quoting <u>Armco, Inc. v. Penrod-Stauffer Bldg.</u>

-3-

Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984)); see Fed. R. Civ. P. 4(e)(1) (permitting an individual to be served by "following state law for serving a summons"); see generally N.C. R. Civ. P. 4. North Carolina law concerning the sufficiency of service of process is to like effect:

> North Carolina courts have long recognized "liberality as the canon of construction when interpreting the North Carolina Rules of Civil Procedure." Adhering to that principle, "[t]echnicalities and form are to be disregarded in favor of the merits of the case." However, the rules governing service of process are to be "strictly enforced to [e]nsure that a defendant will receive actual notice of a claim against him." In that sense, North Carolina courts and the Fourth Circuit echo one another: at the end of the day, the rules are there to be followed.
> Moreover, North Carolina courts "have repeatedly held that actual notice is not a valid substitute for service when that service does not comply with the statute."

Teasley v. Stein, No. 1:20cv1166, 2022 WL 715923, at *2 (M.D.N.C. Mar. 10, 2022) (internal citations omitted) (quoting Washington v. Cline, 233 N.C. App. 412, 420, 761 S.E.2d 650, 655 (2014)); Lemons v. Old Hickory Council, Boy Scouts of Am., Inc., 322 N.C. 271, 275, 367 S.E.2d 655, 657 (1988); Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996); Stack v. Union Reg'l Mem'l Med. Ctr., Inc., 171 N.C. App. 322, 228, 614 S.E.2d 378, 382 (2005)).

### C.  **Federal Rule of Civil Procedure 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Id. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. <u>ANALYSIS</u>

### A. <u>Service of Process</u>

RSNA argues Plaintiff's claims against RSNA should be dismissed because Plaintiff failed to properly serve RSNA.

(RSNA's Br. (Doc. 48) at 6–7.) RSNA points to two deficiencies with Plaintiff's service: (1) "the Affidavit of Service omits the suite number of th[e] multi-site building" in which RSNA's registered agent was located; and (2) "[t]he Affidavit of Service . . . shows that the Complaint was delivered to a Greensboro address and signed for by 'Robert Stephens,'" but "RSNA's registered agent is not 'Robert Stephens,' nor is the registered agent in Greensboro." (Id. at 6.)

Plaintiff refuses to concede that her service of process was improper and argues that RSNA has had actual notice of the Complaint since at least August 27, 2019, as evidenced by Dr. Blank's, the president of the Board of Directors of RSNA, email. (See Pl.'s Resp. (Doc. 52) at 9.) Plaintiff argues that any failures with her service of process "are minor technical violations that do not overshadow the fact that Plaintiff substantially complied with Rule 4 in serving RSNA." (Id.) Plaintiff's arguments in this regard confuse "minor technical violations" with her failure to effect service on the corporation's registered agent. This is not a minor technical violation.

Federal Rule of Civil Procedure 4(h) governs the service of process upon corporations and provides that service may be accomplished by, inter alia,

-6-

> delivering a copy of the summons and of the complaint
> to an officer, a managing or general agent, or any
> other agent authorized by appointment or by law to
> receive service of process and—if the agent is one
> authorized by statute and the statute so requires—by
> also mailing a copy of each to the defendant.

Pursuant to Rule 4(m), service must be effected within ninety days after the complaint is filed. "[T]he Fourth Circuit has recognized that noncompliance with Rule 4 does not mandate dismissal where the necessary parties have received actual notice of a suit and where they have not been prejudiced by the technical defect." Fields v. Norfolk & S. Ry. Co., 924 F. Supp. 2d 702, 708 (S.D.W. Va. 2012) (citing Karlsson v. Rabinowitz, 318 F.2d 666, 668–69 (4th Cir. 1963)).

Here, it is undisputed that RSNA received actual notice of the suit. Dr. Blank acknowledged in an August 29, 2019 email that he "was the president of the Board of Directors" of RSNA when Plaintiff was a student, and that "[t]here was a statement of complaint sent by mail, which ha[d] been forwarded to [him] and for which [he] signed receipt o[n] Tuesday 27 August 2019." (Ex. 3 ("Email") (Doc. 28-3) at 2.) It is also evident that Plaintiff failed to properly serve RSNA. Plaintiff did not properly serve RSNA's registered agent, nor did Plaintiff properly serve by the other ways allowed for under Rule 4(h). Although Plaintiff refuses to concede that her service was improper, she offers no evidence that her service of process

-7-

fully complied with the rules. (See Pl.'s Resp. (Doc. 52) at 9.)
The undisputed facts are that the Complaint was sent by
certified mail, return receipt requested, to RSNA's address.
(See Doc. 7.) Although the Barrett Drive address in Raleigh was
listed for delivery, (id. at 2), there is conflicting USPS
information that the "item was delivered to an individual at the
address . . . on August 15, 2019 in GREENSBORO, NC 27406," (id.
at 4). Even assuming the USPS tracking information is incorrect,
and the item was in fact delivered in Raleigh, the item was
signed for by an individual, "Robert Stephens," (id. at 2), who
"has no connection or affiliation with RSNA," (Decl. of Jonathan
W. Blank, MD ("Blank Decl.") (Doc. 28) ¶ 8). These facts do not
support a finding that service was properly effected.

### 1.   Good Cause

Under Federal Rule of Civil Procedure 4(m), federal courts
must extend time to serve process upon a finding of good cause.
To establish good cause for a service extension, a plaintiff
must show diligence. Gelin v. Shuman, 35 F.4th 212, 218 (4th
Cir. 2022).

> "Good cause" requires a "showing of diligence on
> the part of the plaintiffs." Consistent with that
> foundational principle, good cause is commonly found
> to "exist[] when the failure of service is due to
> external factors, such as the defendant's intentional
> evasion of service," but "significant periods of
> inactivity" and a "fail[ure] to seek extension of time
> before [the] deadline [has] lapsed" tend to undercut

-8-

any claim of good cause. At bottom, "[w]hile 'good
cause' is a flexible standard, diligence provides a
touchstone for an appellate court" in its review.

Id. (alterations in original) (internal citations omitted)
(quoting Attkisson v. Holder, 925 F.3d 606, 627 (4th Cir.
2019)).

The Fourth Circuit recently clarified that if good cause is
shown, the court must extend the time for service. Id. at 220
("[I]f the plaintiff is able to show good cause for the failure,
then the court must grant the extension."). However, if good
cause is not shown, the court may choose to extend the time for
service but is not required to do so. Id. (["W]e hold that under
Rule 4(m), a district court possesses discretion to grant the
plaintiff an extension of time to serve a defendant with the
complaint and summons even absent a showing of good cause by the
plaintiff for failing to serve the defendant during the 90-day
period provided by the Rule.").

This court finds Plaintiff has not been diligent, and she
is thus not entitled to an extension for good cause. The reasons
for Plaintiff's delay in completing proper service were not
external; rather they were wholly within her control. This is
not a case in which the defendant evaded service; in August 2019
RSNA on its own reached out to Plaintiff's counsel because it
had received a complaint and asked about next steps given RSNA

-9-

"ha[d] been subsumed into University of North Carolina-Greensboro's School of Nursing." (Email (Doc. 28-3) at 2–3.) Plaintiff also failed to recognize that the signed return receipt was signed for by "Robert Stephens" seemingly in Greensboro, North Carolina, but the Complaint was supposed to be served on RSNA's registered agent, Walter Rogers, in Raleigh, North Carolina. (See Doc. 7.) Moreover, if Plaintiff had not recognized the improperness of her service on RSNA, it was made abundantly clear to her in this court's January 12, 2022 memorandum opinion setting aside entry of default against RSNA. (See Mem. Op. & Order (Doc. 44).) Over three years have passed since the inception of the case, over six months have passed since this court set aside entry of default against RSNA, and to date Plaintiff has failed to properly serve RSNA. These "'significant periods of inactivity' and [] 'fail[ure] to seek extension of time before [the] deadline [has] lapsed' tend to undercut any claim of good cause." Gelin, 35 F.4th at 218 (alterations in original) (quoting Attkisson, 925 F.3d at 627). In sum, this court is not required to grant an extension for service.

## 2. Discretionary Authority to Extend Time

As explained, even in the absence of good cause this court may exercise its discretion to grant an extension to complete

-10-

service. Id. at 220. In exercising this discretion, Federal Rule of Civil Procedure 6(b)(1)(B)'s excusable neglect standard applies. Bolus v. Fleetwood RV, Inc., 308 F.R.D. 152, 156 (M.D.N.C. 2015) (finding the majority view holds that if a plaintiff fails to establish good cause for a service extension under Rule 4(m), the plaintiff must establish excusable neglect under Rule 6(b) to receive a discretionary extension). The Supreme Court has held that the inquiry under Rule 6(b)

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . [1] the danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

The first factor weighs in Plaintiff's favor. RSNA does not argue, and this court is unable to find, any particularized prejudice RSNA would face if the deadline were extended. Given that RSNA has had actual notice of this case since August 2019, this court finds any risk of prejudice is minimized.

The second factor also weighs in Plaintiff's favor. This court is considering extending the time to complete proper service for two weeks. This extension is short and will have

-11-

minimal impact on these proceedings. Discovery has closed, the
parties, including RSNA, have briefed motions for summary
judgment, (see Docs. 72, 75), and a trial date has been set,
(Doc. 84). Giving Plaintiff two weeks to properly serve RSNA
will not impact summary judgment or trial.

The third factor, which the Fourth Circuit has described as
"[t]he most important of the factors identified in Pioneer,"
Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d 530, 534
(4th Cir. 1996), weighs slightly in RSNA's favor. As discussed
supra Section III.A.1, part of the reason for the delay has been
Plaintiff's lack of diligence in recognizing and correcting
service defects. However, this court recognizes that some
confusion was likely created by RSNA becoming subsumed within
University of North Carolina School of Greensboro's ("UNCG")
School of Nursing, (see Email (Doc. 28-3)), which lessens
Plaintiff's role in failing to properly serve RSNA.

Furthermore, while Dr. Blank's affidavit was an integral
part of the proceedings to set aside default, it does raise some
questions about the facts underlying service. First, Dr. Blank's
email states "[t]here was a statement of complaint sent by mail,
which has been forwarded to me and for which I signed receipt
o[n] Tuesday 27 August 2019." (Email (Doc. 28-3) at 2.) Dr.
Blank does not explain what "signed receipt" means, but that

-12-

statement gives rise to some inference that a process occurred which required him to acknowledge receipt, perhaps by the registered agent. Moreover, although Dr. Blank contends "RSNA vacated its principal office located at 3900 Barrett Drive" in 2018, (Blank Decl. (Doc. 28) at 2), this address change was not filed with the secretary of state until 2020, (id. ¶ 16; Doc. 28-4). Finally, while this court does not countenance the failure to respond to Dr. Blank's email by Plaintiff's counsel, Dr. Blank bears the responsibility for addressing his legal affairs, not Plaintiff's counsel. On balance, while both parties bear responsibility for creating this already avoidable conflict, the fact of actual notice causes this factor to weigh in favor of Plaintiff.

All parties are reminded of Federal Rule of Civil Procedure 1: "[these rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Plaintiff's apparent unwillingness to respond in any fashion to Dr. Blank's email at least advising him to obtain counsel is not evidence that "RSNA neglected to do anything in response to Ms. Davis' lawsuit." (Pl.'s Opp'n to Def.'s Mot. to Set Aside Default J. (Doc. 37) at 1.) Similarly, a recognition that the unusual corporate changes—closing an office but not

-13-

filing with the secretary of state for two years—might merit some consideration.

The fourth factor, whether Plaintiff has acted in good faith, is neutral. Plaintiff has not asked this court for an extension; the court is considering an extension upon its own exercise of discretion.

In addition to the four non-exhaustive Pioneer factors, Fourth Circuit courts also examine whether discretionarily denying a motion to extend the time for service would cause "any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling." Blaylock v. UPS, Inc., CIVIL ACTION NO. 1:20-00156, 2020 WL 3979667, at *2 (S.D.W. Va. July 14, 2020) (internal quotation marks omitted) (quoting Robinson v. G D C, Inc., 193 F. Supp. 3d 577, 580 (E.D. Va. 2016)).[3]  This additional factor finds direct support in the Advisory Committee Notes to the 1993 Amendments to Rule 4(m), which expressly state that discretionary "[r]elief may be justified . . . if the applicable statute of limitations would bar the refiled action."

---

[3] Blaylock identified three other non-Pioneer factors to "guide the discretionary decision of whether to enlarge the service period": (1) "whether the plaintiff sought an extension before the deadline"; (2) "the plaintiff's pro se status"; and (3) "whether time has previously been extended." 2020 WL 3979667, at *2. Two of these weigh in RSNA's favor; Plaintiff did not seek an extension pre-deadline nor is she pro se. One weighs in Plaintiff's favor; this court has not previously extended the time for service.

"[C]ourts typically grant extra weight to this factor." Id. at
*3; see also 4B Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedures § 1137 (4th ed. Apr. 2022 update) ("Of
these factors, courts place the most emphasis on a statute of
limitations bar.").

This factor weighs in Plaintiff's favor. As will be
explained, Plaintiff has plausibly alleged her first and second
claims, see infra Section III.C;[4] Plaintiff's other claims
against RSNA will be dismissed. Plaintiff's surviving claims are
brought under Title IX. (Compl. (Doc. 1) ¶¶ 79-98.) If this
court were to grant RSNA's motion to dismiss under Rule
12(b)(5), even without prejudice, Plaintiff's federal Title IX
claims would be time-barred. See Rouse v. Duke Univ., 535 F.
App'x 289, 294 (4th Cir. 2013) (finding statute of limitations
for Title IX claim brought in North Carolina is three years).
Where a claim is comprised of a series of acts, so long as one
of the acts occurred within the limitations period, the entire
time period may be considered. See, e.g., Jennings v. Univ. of
N.C. at Chapel Hill, 240 F. Supp. 2d 492, 499-500 (M.D.N.C.
2002). Even assuming the acts giving rise to Plaintiff's Title
IX claims were part of a series of acts occurring from 2016

---

[4] RSNA did not move to dismiss Plaintiff's Title IX
retaliation claim. Therefore, that claim survives a motion to
dismiss.

until Plaintiff left the DNP program in June 2018, (see Compl. (Doc. 1) ¶¶ 37-38, 56-57), the three-year statute of limitations has run. That causes this court great concern because it means Plaintiff's claims would ultimately not be adjudicated on the merits but instead disposed of on technical procedural grounds. That would not be in accordance with the Fourth Circuit's strong preference "in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); see also Blaylock, 2020 WL 3979667, at *3 (discretionarily granting motion for service extension because, inter alia, "there is a preference to resolve cases on the merits rather than technical procedural grounds").

This court concludes that the balance of the relevant factors weighs in favor of granting a discretionary extension of time for service. Although not all of the Pioneer factors weigh in favor of an extension, this court ultimately finds the factors weighing against an extension to be offset by the crucial non-Pioneer factor concerning the prejudice imposed on a plaintiff by a statute of limitations bar. Granting this extension is also consistent with the Fourth Circuit's admonition that in cases like this one where there was actual notice, the relevant procedural rules should be applied

-16-

liberally. See Armco, 733 F.2d at 1089; see also Elkins, 213 F.R.D. at 275.

This court does not grant an extension lightly, especially considering the facts do not support a finding of good cause under federal law for an extension. See supra Section III.A.1. "[T]he rules are there to be followed," Armco, 733 F.2d at 1089, "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1. Plaintiff did not follow the rules here. If that pattern continues, it may result in substantive consequences directly affecting whether Plaintiff's case will be adjudicated on its merits. Further disregard of the rules will not be tolerated.

**B.** **Eleventh Amendment Immunity**

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "At its core, the Eleventh Amendment bars federal courts from exercising jurisdiction over suits against nonconsenting states or state entities." Kadel v. N.C. State Health Plan for Tchrs. & State Emps., 12 F.4th 422, 428 (4th Cir. 2021).

-17-

State sovereign immunity bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, often referred to as an "arm of the State." See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 124 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); see also McCray v. Md. Transit Admin., 741 F.3d 480, 483 (4th Cir. 2014); Bland v. Roberts, 730 F.3d 368, 389-90 (4th Cir. 2013); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479 (4th Cir. 2005). State universities, including UNCG, are entitled to Eleventh Amendment immunity. See Emanuelson v. Univ. of N.C. at Greensboro, No. 1:17CV534, 2018 WL 1779342, at *4 (M.D.N.C. 2018) ("UNCG is a constituent institution of the University of North Carolina and, as such, UNCG, like the University of North Carolina, is an agency of the State of North Carolina entitled to Eleventh Amendment immunity."); McCants v. NCAA, 251 F. Supp. 3d 952, 959-60 (M.D.N.C. 2017) (noting that UNC has Eleventh Amendment immunity); McAdoo v. Univ. of N.C. at Chapel Hill, 248 F. Supp. 3d 705, 718-19 (M.D.N.C. 2017) (concluding that UNC is an arm of the state).

-18-

RSNA argues that Plaintiff's 42 U.S.C. § 1983 claims, as well as Plaintiff's state law claims, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) as barred by the Eleventh Amendment. (RSNA's Br. (Doc. 48) at 10–14.) RSNA contends that "[b]ecause RSNA is alleged to be a 'joint/single entity' with UNCG, then RSNA is also entitled to Eleventh Amendment immunity." (Id. at 10.)

This court previously found that the Eleventh Amendment barred Plaintiff's unjust enrichment claim against UNCG, and Plaintiff conceded that the Eleventh Amendment barred her § 1983 claims and North Carolina constitutional claim against UNCG insofar as she requested damages. (See Mem. Op. & Order (Doc. 13) at 12–18.) Plaintiff alleges that "RSNA is a joint/single entity with UNCG under applicable law." (Compl. (Doc. 1) ¶ 7.) Taking that allegation as true, if UNCG is immune from suit, then so is RSNA because they are one and the same. However, Plaintiff also alleges that RSNA is a private, non-profit corporation. (See id. ¶ 6.) This court must determine what to make of these contradictory allegations.

Plaintiff argues that she "is entitled to plead alternative or inconsistent facts at this early stage." (Pl.'s Resp. (Doc. 52) at 16.) Plaintiff points to her allegation that RSNA is a "non-profit corporation duly organized under the laws of

-19-

the State of North Carolina" as suggesting that RSNA is not entitled to Eleventh Amendment immunity. (<u>Id.</u> (internal quotation marks omitted) (quoting Compl. (Doc. 1) ¶ 6).)

> [A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.

<u>In re Livent, Inc. v. Noteholders Sec. Litig.</u>, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (collecting cases). Here, Plaintiff has set out two conflicting statements about RSNA; both cannot be true. Plaintiff alleges "RSNA is a non-profit corporation duly organized under the laws of the State of North Carolina." (Compl. (Doc. 1) ¶ 6.) Plaintiff also alleges "RSNA is a joint/single entity with UNCG under applicable law and otherwise acted in concert with UNCG or others as it relates to the unlawful conduct alleged herein." (<u>Id.</u> ¶ 7.)

This court finds Plaintiff cannot overcome the Eleventh Amendment's bar to suing a state entity by pleading internally inconsistent allegations that RSNA is both a public and private entity. Rule 8 does not "grant[] plaintiff[] license to plead inconsistent <u>assertions of facts</u> within the allegations that serve as the factual predicates for an independent, unitary

claim." In re Livent, 151 F. Supp. 2d at 407. In In re Livent, the court analyzed "to what extent the pleadings in the complaint may be self-contradictory," such as when pleadings allege "both that plaintiffs had knowledge of a critical fact and that they had no such knowledge; or that plaintiffs had no awareness of specific information revealed in some particular document, while at the same time asserting that they relied upon the contents of that same document." Id. at 405. The court found that it was not required to accept as true conflicting pleadings when those pleadings are contradicted by other statements in the complaint or by documents upon which the complaint relies. Id. Thus, the court granted the motion to dismiss because "the allegations of fraud [were] internally self-contradictory, and the inconsistencies defeat[ed] a reasonable inference that the requisite scienter standard the pleadings must demonstrate ha[d] been satisfied." Id. at 407.

Where, as here, a plaintiff pleads contradictory allegations, those inconsistencies defeat a reasonable inference in the plaintiff's favor. See id.; see also Colden v. W. Coast Life Ins. Co., Civil Action No. RDB-12-1691, 2013 WL 1164922, at *5 (D. Md. Mar. 19, 2013) ("Rule 8 prohibits the pleading of 'internally conflicting factual assertions,' which serve as the 'predicates for an independent, unitary claim'" (quoting In re

-21-

Livent, 151 F. Supp. 2d at 406)). Plaintiff has pled internally conflicting factual assertions. (Compare Compl. (Doc. 1) ¶ 6, with id. ¶ 7.) This court declines to infer that RSNA is a private non-profit company and finds sovereign immunity precludes RSNA from suit.  Accordingly, Plaintiff's § 1983 and state law claims (claims three, four, five, and eight), will be dismissed against RSNA for the same reasons those claims were dismissed against UNCG. (See Mem. Op. & Order (Doc. 13) at 12–18.)

C.  **Title IX**

Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX contains an implied private right of action permitting aggrieved parties to sue educational institutions for alleged violations. Cannon v. Univ. of Chi., 441 U.S. 677, 713 (1979). Title IX liability can extend to the educational institution when teachers or other students harass a victim student due to the victim's sex. See Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 646–47 (1999) (finding that a school can be liable for "known acts of student-on-student sexual harassment [when] the harasser is under the

-22-

school's disciplinary authority"); Feminist Majority Found. V.
Hurley, 911 F.3d 674, 695-96 (4th Cir. 2018) (finding plaintiffs
sufficiently alleged that public university exerted substantial
control over context in which student-on-student sexual
harassment occurred and were deliberately indifferent to that
harassment).

> To establish a Title IX claim on the basis of
> sexual harassment, a plaintiff must show that (1) she
> was a student at an educational institution receiving
> federal funds, (2) she was subjected to harassment
> based on her sex, (3) the harassment was sufficiently
> severe or pervasive to create a hostile (or abusive)
> environment in an educational program or activity, and
> (4) there is a basis for imputing liability to the
> institution.

Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007).
RSNA moves to dismiss Plaintiff's claim for sex discrimination
or a sexually hostile work environment under Title IX. (RSNA's
Br. (Doc. 48) at 7-10.)[5] Specifically, RSNA argues "Plaintiff
fails to satisfy the fourth element" of this claim. (Id. at 7.)

Plaintiff does not allege that her harasser was formally
affiliated with RSNA. When a federal funding recipient does not
engage in harassment directly, the court can impute liability to
an institution if it is "deliberately indifferent to sexual

---

[5] As Plaintiff notes, (see Pl.'s Resp. (Doc. 52) at 10 n.2),
RSNA does not move to dismiss Plaintiff's claim of retaliation
in violation of Title IX, (see RSNA's Br. (Doc. 48)). Therefore,
this court declines to determine whether Plaintiff has plausibly
alleged a retaliation claim under Title IX.

-23-

harassment, of which [it has] actual knowledge," <u>Davis</u>, 526 U.S.
at 650, and its "deliberate indifference . . . cause[s] [the
victim] to undergo harassment or make[s] [her] liable or
vulnerable to it," <u>id.</u> at 645 (internal quotation marks
omitted). Three prongs are required: actual knowledge,
deliberate indifference, and Plaintiff's resulting vulnerability
to future harassment. Plaintiff alleges sufficient facts to
plausibly establish that RSNA had actual knowledge of the
harassment, was deliberately indifferent to it, and made her
vulnerable to continued harassment by the male CRNA.

First, Plaintiff plausibly alleges actual knowledge by
RSNA. Plaintiff first complained about "sexual harassment and
physical assault" to two officials, one of whom was the RSNA
Assistant Program Administrator of the DNP, in July 2016—her
first month at WakeMed. (Compl. (Doc. 1) ¶¶ 36–37, 41.)[6] She

---

[6] Plaintiff also alleges that Defendants had extensive
knowledge of previous complaints by other victims of sexual
harassment. (Compl. (Doc. 1) ¶¶ 26–28.) However, Plaintiff fails
to provide any details about these alleged complaints, including
the identities of the victims, dates of the reports, content of
the allegations, or information about who received the
complaints. Though this court considers Plaintiff's allegations
regarding past victims conclusory at this stage, Plaintiff
provides enough information about her own experience to
establish the elements of a sexual harassment claim without
relying on prior victims at this stage in the pleadings. Though
more information may arise at a later stage, this court will not
incorporate these conclusory allegations into its present
analysis.

-24-

later complained a second time and Dr. Stone and others were
advised "that '[e]very encounter with [the male CRNA] has
escalated, and the last encounter left me feeling sexually
exploited for weeks.'" (Id. ¶¶ 44–45.) These two instances
sufficiently establish actual knowledge on the part of RSNA. See
Jennings, 482 F.3d at 700 (finding that where victim met with
"an official responsible for fielding sexual harassment
complaints" to describe harassment, sufficient evidence existed
for a jury to decide whether the victim "gave [the official],
and by extension UNC, actual notice" of harassment).

Plaintiff also alleges deliberate indifference by RSNA. An
institution will be deemed deliberately indifferent to
harassment "only where [its] response to the harassment or lack
thereof is clearly unreasonable in light of the known
circumstances." Rouse v. Duke Univ., 914 F. Supp. 2d 717, 723–24
(M.D.N.C. 2012), aff'd, 535 F. App'x 289 (4th Cir. 2013)
(alteration in original) (quoting Davis, 526 U.S. at 648). After
Plaintiff's July 2016 complaint, no action was taken. (Compl.
(Doc. 1) ¶ 43.) Moreover, the Chief CRNA at WakeMed made clear
that no one from UNCG or RSNA so much as attempted to keep
Plaintiff separate from her harasser, in spite of UNCG and
RSNA's ability to do so. (Id. ¶ 44.) Thus, Plaintiff was forced
to continue working "under the male CRNA's direct supervision"

-25-

even after both of her complaints to RSNA. (Id. ¶ 54.) The
Fourth Circuit has found far more robust responses than this one
plausibly inadequate. See Feminist Majority Found. v. Hurley,
911 F.3d 674, 689 (4th Cir. 2018) (finding that a university's
response to harassment complaints was plausibly unreasonable
even when the university held "listening circles," sent an email
about the issue, and gave a threatened student a campus police
guard for one evening); Jennings, 482 F.3d at 701 (finding that
a "[u]niversity's failure to take any action to remedy the
[harassment] would allow a rational jury to find deliberate
indifference to ongoing discrimination").

Moreover, RSNA controlled Plaintiff's educational
environment. Deliberate indifference may only be alleged where
the institution "exercises substantial control over both the
harasser and the context in which the known harassment occurs."
Davis, 526 U.S. at 645. RSNA argues that "[t]o suggest that RSNA
had any control over WakeMed's call schedule, much less
'substantial control' sufficient to demonstrate deliberate
indifference, defies logic" because the male CRNS "worked the
call schedule at WakeMed, [so] it was inevitable that Plaintiff
might 'be assigned with him on off-shifts.'" (RSNA's Br.
(Doc. 48) at 8–9 (quoting Compl. (Doc. 1) ¶ 46).) However,
Plaintiff alleges that the Chief CRNA at WakeMed told her UNCG

and RSNA officials could "obtain . . . restrictions on
[Plaintiff's] contacts with the male CRNA"." (Compl. (Doc. 1)
¶ 44.) Nor did WakeMed get the final say over student
supervision: in fact, the WakeMed employee advised Plaintiff to
talk with her administrators from UNCG and RSNA to get their
"authorization" for the change. (Id.) While RSNA may not have
had complete authority over the male CRNA's actions, RSNA had
the ability to remove him from a supervisory role over Plaintiff
and could thereby exercise control over supervision assignments.
Thus, by communicating the issues to Dr. Stone, Plaintiff
reported the harassment to "an official of the recipient entity
with authority to take corrective action to end the
discrimination." Gebser, 524 U.S. at 290.

    Furthermore, Plaintiff alleges that RSNA continued to
assign Plaintiff to the same male CRNA even after she advised
them in November 2016 of her continued hostile environment. (See
Compl. (Doc. 1) ¶¶ 37, 44, 54.) Plaintiff's repeated allegation
that Defendants "assigned" her to the male CRNA, (id.), also
implies RSNA's substantial control over the harasser's
supervisory role within the UNCG/RSNA program.[7]

---

[7] While Plaintiff does not provide details about how the
supervision program is orchestrated, taking all facts in the
light most favorable to Plaintiff, she has clearly alleged that
RSNA played a role in her assignments.

-27-

RSNA also had substantial control over the context in which the known harassment occurred. Plaintiff alleges that she was "assigned" to WakeMed by RSNA as part of her curriculum in the DNP program. (Id. ¶¶ 17, 37, 54.) Her monthslong presence at WakeMed was a direct part of her UNCG/RSNA education and is reasonably inferred from the Complaint as a matter within RSNA's discretion. This alone means RSNA could influence the clinical work environment—by all accounts, RSNA and UNCG placed Plaintiff in that environment over other clinical offerings. Plaintiff suggests the availability of alternative offerings by faulting RSNA for "continuing to assign [Plaintiff] to perform clinical work at WakeMed hospital." (Id. ¶ 54.) These facts, along with Dr. Stone's supervisory role and ability to restrict Plaintiff's contacts within the hospital, constitute plausible allegations of substantial control.

Finally, as is required for a deliberate indifference claim, Plaintiff plausibly alleges that she was left vulnerable to harassment after her supervisors dismissed her initial complaints. When she reached out again to Drs. Shedlick and Stone on November 1, Plaintiff seems to indicate that the harassment had continued since her first complaint four months earlier, stating "[e]very encounter with [the male CRNA] has escalated, and the last encounter left [her] feeling sexually

-28-

exploited for weeks." (Id. ¶ 45 (internal quotation marks omitted).) Contrary to RSNA's assertions, Plaintiff also alleges elsewhere that the harassment occurred "[t]hroughout the time [Plaintiff] performed her clinical work at WakeMed," referencing the male CRNA's repeated behavior. (Id. ¶ 38.) Moreover, Davis does not require that a plaintiff be actually subjected to further harassment after her complaint, but rather that she be made "'liable or vulnerable' to it." 526 U.S. at 645 (quoting Random House Dictionary of the English Language 1415 (1966)). Upon bringing the issue up with her supervisors again, Plaintiff was chastised and informed she would continue working with her harasser. (Compl. (Doc. 1) ¶ 46.) Despite Plaintiff's complaints, she alleges "no meaningful investigation . . . ever occurred." (Id. ¶ 43.) Plaintiff was subsequently assigned, by RSNA, to further shifts under the direct supervision of her harasser. (Id. ¶ 54.) Thus, Plaintiff has plausibly alleged that RSNA, at a minimum, left her vulnerable to continued harassment. Plaintiff has alleged facts to support all four elements of a sexual harassment claim, including the multiple prongs required to impute liability to RSNA. Thus, RSNA's motion to dismiss Plaintiff's Title IX claim will be denied.

-29-

D.   **Disability Discrimination**

1.   **Americans with Disabilities Act ("ADA")**

RSNA also moves to dismiss Plaintiff's ADA claims. RSNA argues Plaintiff's ADA discrimination claim should be dismissed because Plaintiff failed to sufficiently allege RSNA failed to provide reasonable accommodations and dismissed Plaintiff because of her disability. (RSNA's Br. (Doc. 48) at 14-15.) RSNA argues Plaintiff's ADA retaliation claim should be dismissed because Plaintiff fails to sufficiently allege RSNA caused her dismissal from the nurse anesthesia program. (Id. at 15-17.)

a.   **Disability Discrimination**

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to state a claim under the ADA, Plaintiff must allege that (1) "she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." Constantine, 411 F.3d at 498; see also Baird ex rel. Baird v.

-30-

Rose, 192 F.3d 462, 467-70 (4th Cir. 1999). Title II of the ADA also "requires . . . universities to make reasonable accommodations for disabled students to ensure that they are able to participate in the educational program." Constantine, 411 F.3d at 488.

RSNA does not dispute that Plaintiff has a disability. (See RSNA's Br. (Doc. 48) at 15; see also Compl. (Doc. 1) ¶ 47.) Accordingly, this court considers whether Plaintiff has sufficiently alleged the latter two elements of an ADA discrimination claim.

This court first addresses whether Plaintiff has adequately alleged RSNA failed to reasonably accommodate her disability. Plaintiff alleges she requested, and received, reasonable accommodations from the University, "including extended time for completing exams and placement in a quiet environment when taking exams to limit interruptions." (Compl. (Doc. 1) ¶ 48.) Although Plaintiff alleges that Dr. Shedlick and Dr. Stone "mocked" her ADHD and threated to dismiss her from the program, (id. ¶ 50), these facts do not materially affect the actual accommodations of extended time and a quiet testing environment.

Plaintiff also alleges that Dr. Shedlick and Dr. Stone "repeatedly interrupted [Plaintiff] during testing" to ensure Plaintiff did not have a quiet test-taking environment. (Id.

-31-

¶ 49.) Plaintiff does not allege when or how often these interruptions occurred, or how severely they affected her quiet environment. Nor does she allege any facts indicating that these interruptions affected her test-taking performance. This single fact is the sole allegation that Plaintiff's accommodations were anything short of reasonable, and without more, is insufficient to plausibly allege RSNA failed to accommodate Plaintiff's disability.

Turning to whether Plaintiff has plausibly alleged she was discriminated against on the basis of her disability, this court finds Plaintiff has failed to allege any facts to suggest she was dismissed from the DNP program due to her ADHD. (See id. ¶ 135.) Plaintiff specifically alleges she was dismissed from the program for non-academic reasons. (Id. ¶ 56.) Plaintiff does not allege this "false reason[]" was "orchestrated" to dismiss her because of her ADHD, or that her ADHD was the reason she was dismissed. (See id.)

In summary, Plaintiff has failed to allege facts that suggest "more than a sheer possibility that" RSNA failed to provide reasonable accommodations or that RSNA dismissed Plaintiff from the program because of her disability. See Iqbal, 556 U.S. at 678. Plaintiff's ADA claim will therefore be dismissed pursuant to Rule 12(b)(6).

-32-

###     b.    **Disability Retaliation**

Plaintiff also alleges a claim of retaliation under the ADA. In order to plausibly state a claim of retaliation under the ADA, a plaintiff must allege "(1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002).

RSNA argues Plaintiff failed to plausibly allege "that her report to OARS caused her dismissal from the DNP program." (RSNA's Br. (Doc. 48) at 16.) This court agrees. Although Plaintiff alleges her supervisors threatened potential retaliation if Plaintiff complained, (see Compl. (Doc. 1) ¶ 50.), Plaintiff fails to plausibly allege that Dr. Shedlick and Dr. Stone knew she complained or that their hostile conduct began or escalated in response to the disability discrimination complaint to OARS. Because Plaintiff fails to allege her supervisors were aware of her report to OARS, her retaliation claim fails. See Graves v. Bank of Am., N.A., 54 F. Supp. 3d 434, 443 (M.D.N.C. 2014) (finding that in the Title VII context, "[e]mployer knowledge of an EEOC charge is 'absolutely necessary' for a finding of retaliation" (quoting Dowe v. Total

_Action Against Poverty_, 145 F.3d 653, 657 (4th Cir. 1988)));
(_cf._ Compl. (Doc. 1) ¶¶ 42, 45 (Plaintiff alleges that she
reported discrimination directly to the supervisors who began to
retaliate against her.).)

Moreover, the lack of a date for the OARS complaint makes
it impossible to draw sufficient temporal linkage between the
complaint and Plaintiff's dismissal. Plaintiff alleges general
dates demonstrating that her supervisors began treating her
poorly after she complained twice about sexual harassment. (_See_
Compl. (Doc. 1) ¶¶ 42, 45, 53.) However, Plaintiff fails to
adequately place her OARS complaint on this timeline.
Plaintiff's failure to allege an approximate date for her OARS
complaint makes it entirely possible that Plaintiff reported
disability discrimination well after her supervisors' two-year
"near daily campaign to inflict maximum harm upon Ms. Davis" was
already underway. (_Id._ ¶ 53.) For these reasons, Plaintiff is
unable to plausibly allege a sufficient causal link between her
dismissal and her OARS complaint. Plaintiff's ADA retaliation
claim will be dismissed pursuant to Rule 12(b)(6).

### 2. __Rehabilitation Act__

Finally, Plaintiff brings a claim under § 504 of the
Rehabilitation Act of 1973, 29 U.S.C. § 794. (_See_ Compl.
(Doc. 1) ¶¶ 138-52.) RSNA argues Plaintiff's claim of

-34-

discrimination and retaliation in violation of the
Rehabilitation Act should be dismissed for the same reasons as
Plaintiff's ADA claim. (RSNA's Br. (Doc. 48) at 17.) The
Rehabilitation Act differs from the ADA "only with respect to
the third element, causation. To succeed on a claim under the
Rehabilitation Act, the plaintiff must establish [s]he was
excluded 'solely by reason of' [her] disability," a stricter
standard than that imposed by the ADA. Halpern v. Wake Forest
Univ. Health SCiS, 669 F.3d 454, 461-62 (4th Cir. 2012) (quoting
Baird, 192 F.3d at 468-69).

Here, "[b]ecause [Plaintiff] failed to state a viable ADA
claim, [she] failed to state a cognizable Rehabilitation Act
claim." Wicomico Nursing Home v. Padilla, 910 F.3d 739, 751 (4th
Cir. 2018). This court will dismiss Plaintiff's Rehabilitation
Act claim.

## IV.  CONCLUSION

For the foregoing reasons, this court will grant in part
and deny in part RSNA's Motion to Dismiss, (Doc. 47).

**IT IS THEREFORE ORDERED** that RSNA's Motion to Dismiss,
(Doc. 47), is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** as to Plaintiff's § 1983 claims,
North Carolina constitutional claim, unjust enrichment claim,

-35-

ADA claim, and Rehabilitation Act claim (Claims Three, Four, Five, Six, Seven, and Eight). Those claims are **DISMISSED**.

The motion is **DENIED** as to Plaintiff's Title IX claims (Claims One and Two).

**IT IS FURTHER ORDERED** that the time for Plaintiff to properly serve RSNA is extended for two weeks under this court's discretionary authority to extend time for service of process.

This the 22nd day of August, 2022.

_____
United States District Judge

-36-